(March 8, 2001)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WARDELL WATSON, Appellant. [721 NYS2d 700] —Spain, J. Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered March 26, 1997, upon a verdict convicting defendant of the crimes of rape in the first degree (six counts), rape in the third degree (six counts), sodomy in the first degree (two counts), sodomy in the third degree (two counts), sexual abuse in the first degree (four counts), sexual abuse in the second degree, sexual abuse in the third degree (three counts), assault in the second degree, assault in the third degree, endangering the welfare of a child (eight counts) and criminal contempt in the second degree.

Following a jury trial, defendant was convicted of six counts each of rape in the first degree and rape in the third degree,

two counts each of sodomy in the first degree and sodomy in the third degree, three counts each of sexual abuse in the first degree and sexual abuse in the third degree, and seven counts of endangering the welfare of a child. The foregoing convictions stem from defendant's conduct between July 22, 1995 and January 4, 1996 in forcibly raping a 14-year-old (and later 15-year-old) girl (hereinafter the older sister), and forcibly subjecting her to deviant sexual intercourse and sexual contact. Defendant was also convicted under a separate indictment, consolidated with the first for trial, for crimes against the older sister's 13-year-old sister (hereinafter the younger sister) consisting of sexual abuse in the first degree and sexual abuse in the second degree, assault in the second degree and assault in the third degree, criminal contempt in the second degree and endangering the welfare of a child, all committed on January 6, 1996.

The People's proof at trial, which included the testimony of both victims, their mother and two younger brothers, established that defendant and the victims' mother became acquainted in 1992 and, upon his release from prison in early 1995, she permitted him to live with her and her four children in their apartment in the City of Schenectady, Schenectady County. The testimony demonstrated that defendant was physically abusive, controlling and threatening to the entire family, often hitting the mother in front of the children, and instilled fear in all of them that he would harm or kill them. The older sister testified that defendant forcibly engaged in sexual intercourse with her in the family apartment on five specific dates and during one three-week period in 1995, when she was 14 or 15 years old and defendant was 40 years old. The attacks all occurred in the living room on the couch on which defendant slept. She also testified that he repeatedly sodomized and sexually assaulted her, providing details and specific dates.

The younger sister testified that on January 6, 1996, her mother's birthday, defendant—angry because his plan for her and her family to steal from a grocery store had been foiled—ordered her to remove her clothes and lie face down on her bed, at which point he hit her approximately 10 to 12 times on the buttocks with an electrical cord causing bleeding. Defendant then removed her underpants and applied baby oil to her wounds causing further burning pain; he told her he owned her and there was nothing she could do about it. Defendant testified, admitting that he had hit the victims' mother but denying all of the charges regarding both of the victims.

The jury found defendant guilty on all 35 counts submitted, including 13 violent felonies. He was sentenced as a predicate violent felony offender to terms of imprisonment aggregating 189 to 214 years, the maximum of which are six consecutive 25-year determinate terms for five of the counts of rape in the first degree and one count of sodomy in the first degree for crimes against the older sister. On defendant's appeal, we affirm.

As an initial matter, County Court did not err in granting the People's motion to consolidate the two indictments. Here, the People moved to consolidate the two indictments on the ground that the offenses were joinable pursuant to CPL 200.20 (2) (b) or, in the alternative, CPL 200.20 (2) (c). By statute, two indictments against the same defendant may be consolidated for trial if they contain offenses joinable pursuant to CPL 200.20 (2) and, in such case, "the decision to consolidate * * * is committed to the sound discretion of the Trial Judge in light of the circumstances of the individual case" (*People v Lane*, 56 NY2d 1, 8; *see*, CPL 200.20 [4], [5]).

Notably, the victims here were sisters residing with defendant, all the crimes charged were committed in the victims' apartment, the victims were young girls between the ages of 13 and 15 who had been subjected to defendant's physical and sexual abuse and control and had witnessed their mother and siblings—who so testified—being abused and controlled by defendant. The crimes against the sisters, *inter alia*, involved sexual contact, a crime of intent (*see*, *People v Shealy*, 51 NY2d 933; *see also*, Penal Law § 130.00 [2]), in some cases by forcible compulsion, and the January 6, 1996 crimes against the younger sister occurred very close in time to the last two forcible rapes of the older sister (occurring on January 2, 1996 and January 4, 1996). Under these compelling circumstances, we conclude that the offenses were joinable under CPL 200.20 (2) (b) (*see*, *People v Lane*, *supra*, at 8; *People v Fontanez*, 278 AD2d 933; *People v Flowers*, 245 AD2d 1088, *lv denied* 91 NY2d 972).

Further, in light of the circumstances present herein, including defendant's failure to make any showing that he had "both important testimony to give concerning one [victim] and a strong need to refrain from testifying as to the other," we find no abuse of discretion in County Court's decision granting consolidation (*People v Lane*, *supra*, at 5-8; *see*, *People v Boyea*, 222 AD2d 937, 939, *lv denied* 88 NY2d 934; *cf.*, *People v Shapiro*, 50 NY2d 747). Also, many of the offenses were the same or similar in the law, namely, the forcible sexual contact

underlying the sexual abuse (*see*, CPL 200.20 [2] [c]; *see also*, *People v Fontanez, supra*; *People v O'Connor*, 242 AD2d 908, *lv denied* 91 NY2d 895; *People v Berta*, 213 AD2d 659, *lv denied* 85 NY2d 969; *People v Prezioso*, 199 AD2d 343, *lv denied* 83 NY2d 857; *cf., People v Dabbs*, 192 AD2d 932, *lv denied* 82 NY2d 707), further supporting consolidation (*see*, CPL 200.20 [4]).

Defendant makes the related argument that County Court's *Ventimiglia* ruling—permitting introduction of evidence of defendant's prior uncharged crimes against the victims' immediate family members for the purpose of showing defendant's intent and motive, forcible compulsion and the absence of mistake (*see, People v Ventimiglia*, 52 NY2d 350)—was reversible error. After a hearing, County Court limited the People to offering evidence of defendant's prior bad acts against the victims' immediate family members with whom he lived during the period of time in which the crimes occurred, and further restricted the proof by allowing only that which was necessary to permit the jury to understand the context within which the crimes occurred. The testimony in this regard primarily relayed defendant's physical abuse and control of the four members of the victims' household, which included, *inter alia*, threats, hitting the mother in front of her children, and control of the money, keys, household rules and activities.

County Court correctly determined that the introduction of prior bad acts, as limited, was for the permissible purposes of explaining defendant's relationship with the victims and their mother, and establishing the elements of forcible compulsion (*see*, Penal Law § 130.00 [8]; § 130.35 [1]; § 130.50 [1]; § 130.65 [1]; *see also, People v Tas*, 51 NY2d 915) and intent (*see*, Penal Law § 15.05 [1]; § 120.00 [1]; § 130.00 [3]; §§ 130.55, 130.65 [1]; § 130.60 [2]; § 215.50 [3]; *see also, People v Ingram*, 71 NY2d 474, 479; *People v Alvino*, 71 NY2d 233, 241-242; *People v Shorey*, 172 AD2d 634, *lv denied* 78 NY2d 974). Indeed, the information was explanatory of the victims' behavior in that it completed the narrative of the abusive and controlling setting in which the criminal acts occurred and defendant's motives in perpetrating these acts and opportunity to do so, and tended to show the absence of mistake or accident (*see, People v Ely*, 68 NY2d 520, 529-530; *People v McClain*, 250 AD2d 871, *lv denied* 92 NY2d 901). Additionally, defendant filed a notice of alibi and testified that he was with his wife on January 6, 1996 and not in the victims' house at the time the younger sister claimed he sexually abused and assaulted her in her bedroom and, accordingly, the evidence was admissible to establish defendant's

identity as the perpetrator of her injuries (*see, People v Beam,* 57 NY2d 241, 250-251; *People v Engler,* 150 AD2d 827, *lv denied* 75 NY2d 770). Moreover, County Court repeatedly offered appropriate limiting instructions. Thus, it cannot be said that the court's ruling constituted an abuse of discretion (*see, People v Alvino, supra,* at 242; *People v Ely, supra; People v Ventimiglia,* 52 NY2d 350, 361-362, *supra*).

Turning to defendant's contention that the People's belated disclosure of *Rosario* material at midtrial should be treated as a complete failure to disclose—rather than a delay—requiring automatic reversal, we cannot agree. Unquestionably, the People were required prior to trial to provide the defense with the written or recorded statements of any witnesses whom they intended to call at trial, which related to the subject matter of their testimony (*see,* CPL 240.45 [1] [a]; *People v Forrest,* 163 AD2d 213, *affd* 78 NY2d 886), and they failed to do so. Specifically, after the People had rested and the cross-examination of defendant was underway, the prosecutor provided the defense with the misfiled handwritten notes of the investigator who interviewed the older sister on January 19, 1996 just prior to taking her written statement. Defendant moved for a mistrial arguing that he had been substantially prejudiced by the fact that defense counsel did not have the notes at the time he conducted his cross-examination of the older sister. County Court denied the motion, ruling that while the handwritten notes were not the duplicate equivalent of the older sister's written statement and that a *Rosario* violation had occurred, defendant had not been substantially prejudiced by the delayed disclosure. The court offered, *inter alia,* to permit the defense to recall the older sister (or any other witness) for further cross-examination, to direct the People to reopen their case or—to minimize the prejudice to defendant or the appearance the defense was badgering the victim—to instruct the jury that it was the court's decision to recall her based upon the People's belated disclosure of papers required to be turned over to the defense. The defense did not avail itself of any of these opportunities.

While the investigator's notes come within the *Rosario* rule as a prior statement of the testifying victim (*see, People v Consolazio,* 40 NY2d 446, 452-453), no reversible error occurred since the defense had a meaningful opportunity to use the material, including the ability to recross-examine the older sister to bring out any inconsistencies between the notes and her testimony (*see, People v Robertson,* 275 AD2d 380, *lv denied* 95 NY2d 937; *People v Guilbault [Bauer] [Rulison],* 256 AD2d

632, 633, *lvs denied* 93 NY2d 850, 853, 857; *People v Benito*, 256 AD2d 221, *lv denied* 93 NY2d 850, *cert denied* 528 US 810; *People v Bobadilla*, 254 AD2d 493, 493-494, *lv denied* 93 NY2d 850; *People v Farner*, 234 AD2d 561, 562, *lv denied* 89 NY2d 1092). While it would have been less prejudicial had the disclosure preceded the completion of the cross-examination of this victim (*see, e.g., People v Johnson*, 264 AD2d 632, *lv denied* 94 NY2d 864; *People v Murphy*, 188 AD2d 742, 744, *lv denied* 81 NY2d 890), a prosecutor's delay—as here—in turning over *Rosario* material will result in reversal only where the defense is, in fact, "substantially prejudiced" (*see, People v Banch*, 80 NY2d 610, 617; *People v Martinez*, 71 NY2d 937, 940; *People v Ranghelle*, 69 NY2d 56, 63; *People v Guilbault, supra*, at 633).

While the investigator's own interview notes were significantly less detailed and complete than the older sister's written statement and trial testimony, they were substantially consistent. Defendant relies on the reference in the investigator's notes to sexual assaults occurring "30 to 40 times" and up to five times a week to argue that the late disclosure of the notes hampered his cross-examination of the older sister. This is unconvincing, as the older sister's written statement similarly indicated that such assaults had occurred 2 to 5 times a week over the five-month period. The description of the first rape in the interview notes is consistent with the older sister's written statement and testimony (the latter placed the date at August 4, 1995) and the notes, like the older sister's testimony and statement, indicated that the last incident occurred on January 4, 1996.

Clearly, the defense failed to demonstrate that the delayed disclosure affected its trial strategy (*cf., People v Goins*, 73 NY2d 989), that damaging testimony was unwittingly elicited as a result of the delay (*cf., People v Mackey*, 249 AD2d 329, *lv denied* 92 NY2d 927) or that the notes were no longer of any value to the defense when produced midtrial (*see, People v Best*, 186 AD2d 141, 141-142, *lv denied* 81 NY2d 785). The investigator's interview notes are fairly characterized as elliptical, illegible in parts and obviously incomplete (*cf., People v Gonzalez*, 74 AD2d 763, 764). We also find no basis for disagreeing with County Court's conclusion that the prosecutor promptly turned over the material as soon as it was discovered misplaced in another file (*see, People v Stevens*, 216 AD2d 676, *lv denied* 87 NY2d 908; *cf., People v James*, 241 AD2d 463). After careful review, we perceive no abuse of discretion or error in County Court's remedy for the People's delayed disclosure of *Rosario* material (*see, People v Guilbault, supra*, at 633; *People*

*v Leon*, 186 AD2d 587, 588, *lv denied* 81 NY2d 842; *see also*, *People v Bobadilla*, 254 AD2d 493, 494, *supra*; *People v Benito*, 256 AD2d 221, *supra*; *People v Turcios-Umana*, 153 AD2d 707, 707-708, *lv denied* 75 NY2d 777).

Finally, we reject defendant's contention that the evidence that he subjected the younger sister to sexual contact on January 6, 1996 was legally insufficient requiring reversal of his conviction for sexual abuse in the first degree, sexual abuse in the second degree and assault in the second degree. "Sexual contact" is defined broadly and includes "any touching [whether direct or through clothing] of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party" (Penal Law § 130.00 [3]; *see*, *People v Ditta*, 52 NY2d 657, 661; *People v Watson*, 171 AD2d 826, 827, *lv denied* 78 NY2d 1015). The younger sister testified that after ordering her family members to leave the house, defendant forced her to remove her clothing and lie face-down on her bed, where he repeatedly hit her buttocks with an electrical cord; he then removed her underwear and—using his hand—rubbed oil into her buttocks wounds, reminding her that he "owned" her and that there was nothing she could do about it.

It has been recognized that the victim's buttocks may constitute "sexual or other intimate parts" (Penal Law § 130.00 [3]; *see*, *People v Felton*, 145 AD2d 969, 971, *lv denied* 73 NY2d 1014; *People v Boykin*, 127 AD2d 1004, *lv denied* 69 NY2d 1001). Further, "[b]ecause the question of whether a person was seeking sexual gratification is generally a subjective inquiry, it can be inferred from the conduct of the perpetrator" (*People v Beecher*, 225 AD2d 943, 944-945; *see*, *People v Johnston*, 273 AD2d 514, 519, *lv denied* 95 NY2d 935). Here, defendant did not offer an innocent explanation or justification for the touching but, rather, denied it entirely (*see*, *Matter of Olivia YY.*, 209 AD2d 892; *see also*, *Matter of Shannon K.*, 222 AD2d 905, 906).

Viewing the evidence as a whole—including defendant's conduct in requiring the victim to undress and his contemporaneous statements to her—we find that there was a valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury that defendant's purpose in touching this victim was, in fact, sexual gratification (*see*, *People v Bleakley*, 69 NY2d 490, 495; *People v Beecher*, *supra*; *Matter of Olivia YY.*, *supra*; *People v Felton*, *supra*; *People v Boykin*, *supra*; *see also*, *Matter of Joseph A.*, 244 AD2d 724, *lv denied* 91 NY2d 813; *cf.*, *Matter of A.G.*, 253

AD2d 318, 326). Indeed, it has been recognized as "clearly appropriate to infer sexual gratification from the conduct alone when a nonrelative causes intimate contact with a child" (*Matter of A.G.*, *supra*, at 326). The evidence, when viewed in a light most favorable to the prosecution, was sufficient to establish that defendant forcibly subjected the younger sister, who was less than 14 years old, to sexual contact, satisfying the elements of sexual abuse in the first degree and sexual abuse in the second degree (Penal Law §§ 130.65, 130.60 [2]) and, accordingly, assault in the second degree (*see*, Penal Law § 120.05 [6]; *People v Harper*, 75 NY2d 313, 316; *People v Contes*, 60 NY2d 620, 621; *People v Stickles*, 267 AD2d 604, 605, *appeal dismissed* 95 NY2d 839).

We have examined defendant's remaining contentions and find that they are without merit.

Cardona, P. J., Mercure, Crew III and Mugglin, JJ., concur. Ordered that the judgment is affirmed.