■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERIC A. FULLER, Appellant. [854 NYS2d 594]—

Peters, J.P. Appeal from a judgment of the County Court of Essex County (Halloran, J.), rendered May 8, 2003, upon a verdict convicting defendant of the crimes of rape in the first degree, rape in the third degree, sexual abuse in the first degree (two counts), forcible touching, unlawful dealing with a child (three counts) and endangering the welfare of a child (four counts).

During the evening of May 18, 2002, defendant purchased alcohol for his teenage daughter and three of her high school girlfriends who had gathered at defendant's home in Clinton County. He then left the home, returning at approximately 1:00 A.M. By that time, all of the girls were feeling intoxicated. Two girls, victim A (born in January 1986) and victim B (born in September 1986), socialized with defendant, who poured shots of liquor which victim A and defendant consumed. As victim B lay on the living room couch, defendant allegedly positioned his body on top of her. She pushed him off with her legs and stood up, whereupon defendant grabbed her vagina and, as she walked away, her buttocks. Thereafter, defendant was alone in the basement with victim A, who laid down on cushions that were situated on the floor and "passed out." When she awoke, defendant had his finger in her vagina and was on top of her kissing her face. According to victim A, she could not say or do anything to defendant during the attack because she was not fully conscious; she then "passed back out." When she awoke, her pants were around her ankles and "stuff" was dripping down her leg.

Defendant was thereafter indicted for rape in the first degree, rape in the third degree, sexual abuse in the first degree (two counts), forcible touching, unlawful dealing with a child (three counts) and endangering the welfare of a child (four counts). At the ensuing jury trial, defendant denied having intercourse with victim A or inserting his finger into her vagina. Rather, he contended that they shared a mutual kiss and, in a moment of

excitement, he ejaculated on her hands and pajama bottoms as she attempted to pull down his sweatpants. Defendant also claimed that he did not inappropriately touch victim B, but may have inadvertently made contact with her when he stumbled on a coffee table and placed his hands out to catch himself. Defendant was ultimately convicted as charged and thereafter sentenced to consecutive prison terms of 25 years for his conviction of rape in the first degree and seven years for his conviction of sexual abuse in the first degree under count six of the indictment, with all other counts running concurrently. He now appeals.

Defendant challenges his convictions for rape in the first degree, rape in the third degree and sexual abuse in the first degree with respect to victim A, claiming that such convictions are not supported by legally sufficient evidence and are against the weight of the evidence. Particularly, he contests the proof on the element of sexual intercourse with respect to the rape charges (*see* Penal Law § 130.25 [2]; § 130.35) and the element of physical helplessness with regard to the rape in the first degree and sexual abuse in the first degree charges (*see* Penal Law § 130.65 [2]; § 130.35 [2]).*

It is well settled that sexual intercourse can be established by medical evidence where the victim is unable to testify as to penetration (*see People v Carroll*, 95 NY2d 375, 383 [2000]; *People v Dunn*, 204 AD2d 919, 920 [1994], *lv denied* 84 NY2d 907 [1994]). At trial, a sexual assault nurse examiner testified that sperm or seminal fluid can remain in the vaginal pool for up to 72 hours, and victim A testified that she had not had sexual intercourse within the 72 hours prior to the incident. Russell Gettig, a forensic scientist with the State Police, indicated that the vaginal swab taken from victim A less than two days after the incident and stain cuttings taken from the pajama bottoms that she was wearing on the night of the incident each revealed the presence of sperm. Gettig further testified that the sperm on the pajamas matched the DNA of defendant and that the vaginal swabs taken contained the DNA of

---

* "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [w]ho is incapable of consent by reason of being physically helpless" (Penal Law § 130.35 [2]). As for the crime of rape in the third degree, the evidence must establish that defendant, being 21 years old or more, "engage[d] in sexual intercourse with another person less than seventeen years old" (Penal Law § 130.25 [2]). To prove a defendant guilty of sexual abuse in the first degree, the People must demonstrate that the defendant "subject[ed] another person to sexual contact . . . [w]hen the other person is incapable of consent by reason of being physically helpless" (Penal Law § 130.65 [2]).

victim A mixed with that of defendant. Viewing this evidence in a light most favorable to the People, we find a valid line of reasoning and permissible inferences which could lead the jury to conclude that penetration had occurred (*see People v Edwards*, 38 AD3d 1133, 1133 [2007], *lv denied* 9 NY3d 864 [2007]; *People v Bowles*, 97 AD3d 886, 886-887 [1983]).

With respect to the element of physical helplessness, that is, where "a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act" (Penal Law § 130.00 [7]), we have repeatedly held that "a person who is sleeping is 'physically helpless' for the purposes of consenting to sexual intercourse, particularly where the sleep was drug and alcohol induced" (*People v Williams*, 40 AD3d 1364, 1366 [2007], *lv denied* 9 NY3d 927 [2007]; *see People v Sensourichanh*, 290 AD2d 886, 886 [2002]). Here, victim A testified that she is approximately five feet tall and 105 pounds and was "very drunk" on the night of the incident. Victim A also testified that she "passed out" and awoke to find defendant with his finger in her vagina and thereafter "passed back out" during the time in which defendant allegedly performed sexual intercourse. Such evidence was sufficient to permit the jury to conclude that victim A was physically helpless at the time of the criminal acts (*see People v DeCicco*, 38 AD3d 937, 937 [2007], *lv denied* 8 NY3d 983 [2007]; *People v Beecher*, 225 AD2d 943, 945 [1996]; *People v Thiessen*, 158 AD2d 737, 740 [1990], *mod* 76 NY2d 816 [1990]). Having found a valid line of reasoning and permissible inferences for a rational jury to conclude that intercourse occurred and that victim A was physically helpless, defendant's convictions with respect to victim A are supported by legally sufficient evidence. Further, while a different verdict would not have been unreasonable in light of the contradictory version of events offered by defendant, after conducting an independent review of the evidence and according great deference to the jury's assessment of the credibility and demeanor of the witnesses, we are satisfied that the verdict of guilty on each of these counts was not against the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]).

As to victim B, we reject defendant's contention that his conviction of forcible touching was not supported by legally sufficient evidence and against the weight of the evidence. One who "intentionally, and for no legitimate purpose, forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire," is guilty of forcible touching (Penal Law § 130.52). Here, victim B testified that

when she stood, defendant grabbed her vagina and, as she walked away, he grabbed her buttocks. Because the inquiry as to whether a defendant was seeking sexual gratification can be inferred from his or her conduct (*see People v Watson*, 281 AD2d 691, 697 [2001], *lv denied* 96 NY2d 925 [2001]; *People v Beecher*, 225 AD2d at 944-945) and such an inference is " 'clearly appropriate . . . when a nonrelative causes intimate contact with a child' " (*People v Watson*, 281 AD2d at 698, quoting *Matter of A.G.*, 253 AD2d 318, 326 [1999]), we find that victim B's testimony provided the jury with a valid line of reasoning to support the conclusion that defendant touched her vaginal area and buttocks in pursuit of sexual gratification (*see People v Garcia*, 13 AD3d 818, 819 [2004]). Likewise, upon the exercise of our factual review powers, we find the verdict in this regard to be supported by the weight of the evidence (*see People v Bleakley*, 69 NY2d at 495).

We reach a different conclusion, however, as to defendant's claim that his conviction for sexual abuse in the first degree with respect to victim B was legally insufficient and against the weight of the evidence. In order to convict defendant of sexual abuse in the first degree, as charged, the People were required to prove that he subjected victim B to sexual contact by forcible compulsion (*see* Penal Law § 130.65 [1]). As relevant here, forcible compulsion is defined as compelling another "by either . . . use of physical force; or . . . a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person" (Penal Law § 130.00 [8]). With no evidence that the sexual contact was brought about by the use of physical force, we turn to the "evidence establishing the state of mind of the victim caused by defendant's conduct" to ascertain whether the sexual contact was compelled by threat or fear (*People v Davis*, 21 AD3d 590, 591 [2005]; *see People v Thompson*, 72 NY2d 410, 415-416 [1988]). Significantly, victim B testified that defendant did not say anything either prior to or during the alleged sexual contact and, moreover, there is no testimony that victim B was fearful of defendant. To the contrary, victim B stated that she simply walked into the kitchen and ignored the alleged incident and shortly thereafter went back into the living room and onto the couch. Thus, despite the disparity in age, size and strength between defendant and victim B, there was insufficient proof to support the element of forcible compulsion (*compare People v Val*, 38 AD3d 928, 929 [2007], *lv denied* 9 NY3d 852 [2007]; *People v Stephens*, 2 AD3d 888, 889 [2003], *lv denied* 2 NY3d 746 [2004]). We are empowered, however, to reduce defendant's conviction to the lesser included offense of sexual abuse in the third degree (*see* CPL 470.15 [2]

[a]; *People v Roberts*, 134 AD2d 856, 856 [1987]), as the evidence is sufficient to show that defendant subjected victim B to sexual contact without her consent (*see* Penal Law § 130.55; *People v Teicher*, 52 NY2d 638, 646-647 [1981]; *Matter of Randolph P.*, 254 AD2d 94, 94 [1998]).

Defendant next argues that he was prejudiced by the admission of evidence regarding prior bad acts and uncharged crimes of a sexual nature which he allegedly perpetrated during the months preceding the incident at hand. Although evidence of a defendant's prior bad acts or uncharged crimes may not be offered to show his or her bad character or propensity towards crime, such evidence may be admitted if the acts help to establish some element of the crime under consideration (*see People v Blair*, 90 NY2d 1003, 1004-1005 [1997]; *People v Lewis*, 69 NY2d 321, 324 [1987]). Having been charged with four counts of endangering the welfare of a child, a crime which may consist of multiple acts over time (*see People v Simmons*, 92 NY2d 829, 831 [1998]; *People v Keindl*, 68 NY2d 410, 421 [1986]), the challenged testimony was properly admitted to establish that defendant engaged in a course of conduct that was likely to be injurious to the welfare of the victims, an essential element of that crime (*see People v Baker*, 287 AD2d 879, 879 [2001], *lv denied* 97 NY2d 727 [2002]; *People v Archer*, 232 AD2d 820, 821 [1996], *lvs denied* 89 NY2d 1087 [1997], 90 NY2d 938 [1997]; *People v Grotto*, 223 AD2d 758, 758 [1996], *lv denied* 87 NY2d 1020 [1996]).

Nor do we agree with defendant's assertion that he was denied the effective assistance of counsel. The majority of defendant's claims of ineffectiveness represent hindsight disagreement with the trial strategies and tactics employed by counsel which, upon this record, do not equate to true ineffective assistance (*see People v Baldi*, 54 NY2d 137, 146 [1981]; *People v Demetsenare*, 14 AD3d 792, 793 [2005]). Faced with substantial testimonial and physical evidence against defendant, counsel placed a cogent theory before the jury, thoroughly cross-examined the People's witnesses, attempted to challenge the forensic evidence and credibility of Gettig's expert DNA report, called numerous rebuttal witnesses, voiced proper objections and made appropriate pretrial and posttrial motions. While this seasoned attorney's performance may have been imperfect, we reiterate that meaningful representation does not mean representation free of error in every respect (*see People v Ross*, 43 AD3d 567, 570 [2007], *lv denied* 9 NY3d 964 [2007]; *People v Damphier*, 13 AD3d 663, 664 [2004]) and, considering counsel's strategies and alleged errors either alone or in the aggregate,

we find them to be insufficient to constitute a deprivation of meaningful representation (*see People v Benevento*, 91 NY2d 708, 712 [1998]).

Finally, County Court did not abuse its discretion by declining recusal (*see People v Fleegle*, 20 AD3d 684, 685-686 [2005], *lv denied* 5 NY3d 828 [2005], *cert denied* 547 US 1152 [2006]) or imposing the maximum sentence for the crime of rape in the first degree (*see People v Edwards*, 38 AD3d 1133, 1134 [2007], *supra*).

Spain, Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the judgment is modified, on the law, by reducing defendant's conviction of sexual abuse in the first degree under count six of the indictment to sexual abuse in the third degree; vacate the sentence imposed on said conviction and matter remitted to the County Court of Essex County for resentencing; and, as so modified, affirmed.