(August 21, 2008)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WEBSTER L. CHAPMAN, Appellant. [862 NYS2d 660]—

Malone Jr., J. Appeal from a judgment of the County Court of Washington County (Berke, J.), rendered December 19, 2006, upon a verdict convicting defendant of the crimes of rape in the first degree, sexual abuse in the first degree, aggravated sexual abuse in the fourth degree, criminal sexual act in the first degree, unlawfully dealing with a minor (two counts), burglary in the second degree, criminal mischief in the third degree (two counts) and criminal mischief in the fourth degree (two counts).

Following a jury trial, defendant was convicted of rape in the first degree, sexual abuse in the first degree, aggravated sexual abuse in the fourth degree, criminal sexual act in the first degree, two counts of unlawfully dealing with a minor, burglary in the second degree, two counts of criminal mischief in the third degree and two counts of criminal mischief in the fourth degree, and he was sentenced to an aggregate prison term of 58 to 64 years. The convictions on the sex offenses and unlawfully dealing with a minor stemmed from three incidents that occurred during February and March 2006, which involved the 17-year-old girlfriend of defendant's cousin. The remaining convictions stemmed from several acts of vandalism that occurred at the residence of Joan Osborne, defendant's former mother-in-law, between March and May 2006, during which time defendant's former wife, Barbara Chapman, and their three children were living there.

On appeal, defendant first argues that the convictions of rape in the first degree, criminal sexual act in the first degree and aggravated sexual abuse in the fourth degree are not supported by legally sufficient evidence. Although this issue was not properly preserved at trial since defense counsel made only a general motion to dismiss (*see People v Finger*, 95 NY2d 894, 895 [2000]), upon our examination of this record, we conclude that defendant's arguments have merit and we reverse his convictions on those counts as a matter of discretion in the interest of justice (*see* CPL 470.15 [3]).

Defendant was charged with rape in the first degree pursuant to Penal Law § 130.35 (1) and criminal sexual act in the first degree pursuant to Penal Law § 130.50 (1). Specifically, the indictment alleged that defendant engaged in sexual intercourse with the victim by forcible compulsion and that he engaged in oral sexual conduct with the victim by forcibly placing his mouth on her vagina. As is relevant here, forcible compulsion is established by proof of actual physical force or by proof of a threat, either express or implied, that causes a person to fear "immediate death or physical injury to himself, herself or another person" (Penal Law § 130.00 [8] [b]).

The victim's testimony here did not establish that defendant used actual physical force during the alleged incident. She testified on direct examination that she was lying down in defendant's bed when he began to "touch[ ] [her] over or under [her] clothes." According to the victim, she initially ignored defendant, but eventually performed consensual oral sex on him in the hope that he would leave her alone. However, defendant then said that he wanted to perform oral sex on her. The victim testified that defendant did so despite her verbal protest. On cross-examination, the victim added that, after defendant performed oral sex on her, he inserted his penis into her vagina without her consent. Although this testimony was sufficient to establish that the sexual conduct occurred without the victim's consent, it did not establish that defendant used physical force.

Nor was there evidence that the sexual contact was compelled by threat or fear. Defendant's statement to the victim to "put out or get out," by which defendant apparently meant that the victim had to leave his residence if she did not comply with his demands, was not made at the time of the incident in question and, in any event, does not constitute a threat that would cause the victim to fear immediate death or injury. Indeed, the victim admitted that, after defendant made that statement, she actually left the residence three or four times but willingly returned. Likewise, although the victim testified that defendant could be "mean" and "loud" and had a bad temper when he drank alcohol, she stated that, on those occasions, she would "just sit[ ] there listening to him" and that "[h]e wouldn't actually say too much but he would like to complain about everything." Again, this testimony is insufficient to establish that defendant used the threat of imminent death or injury to compel the victim to engage in sexual conduct with him. Accordingly, viewing the evidence in the light most favorable to the prosecution, we find that the evidence presented was legally insufficient to support the convictions of rape in the first degree and criminal sexual act in the first degree as charged in counts one and four of the indictment (*see People v Fuller*, 50 AD3d 1171, 1175 [2008]; *compare People v Val*, 38 AD3d 928, 929 [2007], *lv denied* 9 NY3d 852 [2007]; *People v Black*, 304 AD2d 905, 906-908 [2003], *lv denied* 100 NY2d 578 [2003]).

With regard to defendant's conviction of aggravated sexual abuse in the fourth degree (*see* Penal Law § 130.65-a [1] [a]), the People's theory was that defendant inserted a vibrator into the victim's vagina at a time when she was physically helpless, and thus unable to consent, as a result of intoxication. A person

is considered to be physically helpless when he or she "is unconscious or for any other reason is physically unable to communicate unwillingness to an act" (Penal Law § 130.00 [7]). According to the victim, she became intoxicated, eventually vomited and somehow "ended up back in [defendant's] room," where she again performed consensual oral sex on him. He then inserted the vibrator into her vagina, which she did not initially protest. The victim testified that she eventually told defendant to stop, but that he did not do so. Although this testimony was sufficient to establish that the sexual conduct was not consensual and occurred at a time when the victim was intoxicated, it also established that the victim was conscious at the time of the incident and was able to—and, in fact, did—communicate to defendant her unwillingness. Accordingly, the evidence was also legally insufficient to support the conviction of aggravated sexual abuse in the fourth degree under count six of the indictment (*see People v Conto*, 218 AD2d 665, 666 [1995], *lv denied* 87 NY2d 845 [1995]; *compare People v Fuller*, 50 AD3d at 1174 [the victim became intoxicated, "passed out" and awoke to find the defendant with his finger in her vagina]; *People v Sensourichanh*, 290 AD2d 886, 886-887 [2002] [after drinking alcohol and smoking marihuana, the victim fell asleep and later awoke to the pain of someone having sexual intercourse with her]; *People v Himmel*, 252 AD2d 273, 275 [1999], *lv denied* 93 NY2d 899 [1999] [the victim was aware that the defendant was sodomizing him, but he was so intoxicated that he was unable to speak]).

Contrary to defendant's contention, we find that the evidence was legally sufficient to support defendant's convictions of burglary in the second degree (count 11), two counts of criminal mischief in the third degree (counts 10 and 13) and one count of criminal mischief in the fourth degree (count 12), and the verdicts on said counts, as well as count nine charging criminal mischief in the fourth degree, were not against the weight of the evidence. However, because we also find that defendant was deprived of his right to the effective assistance of counsel, a new trial is warranted on these counts, as well as the remaining counts of the indictment for which defendant was found guilty (counts two, three and seven). Notably, counsel inexplicably failed to request severance of the charges in the indictment even though it appears that they were not all "joinable" offenses pursuant to CPL 220.20, and it is likely that defendant was

unduly prejudiced by the joint trial on all the charges.* In addition, although the failure to request a pretrial hearing does not necessarily constitute ineffective assistance, counsel did not pursue a *Molineux/Ventimiglia* hearing to seek preclusion of evidence of defendant's prior bad acts. Although evidence of a defendant's prior bad acts or uncharged crimes may be admissible when the probative value outweighs the prejudicial effect and "if it helps to establish some element of the crime under consideration or is relevant because of some recognized exception to the general rule," it may not be used to prove a defendant's criminal propensity or general bad character (*People v Alvino*, 71 NY2d 233, 241 [1987]; *see People v Ventimiglia*, 52 NY2d 350, 359 [1981]; *People v Molineux*, 168 NY 264, 293 [1901]). Here, the People elicited testimony at trial that defendant threatened to kill his former wife by slitting her throat and then planned to blame it on the Mafia because he had connections to organized crime. In addition, one witness, who was not a victim, testified that defendant was verbally abusive and that he was afraid that defendant would injure him while he was asleep. This testimony, and other instances of similarly prejudicial hearsay testimony, was not objected to by defense counsel, nor did he request any limiting instructions.

Alone, none of these errors or any of the other unexplained omissions—including counsel's waiver of an opening statement, waiver of cross-examination of certain witnesses, giving a cursory and unorganized closing statement and failing to object to inflammatory statements made during the prosecution's closing argument (which included calling defendant a "slime ball," labeling a bag owned by defendant as a "terrorist pack" and repeatedly stating that defendant "terrorize[d]" his wife and children)—were sufficient to constitute ineffective assistance of counsel. However, considering the totality of the circumstances presented here, we are convinced that no legitimate trial strategy existed for counsel's actions, which, when considered in the aggregate, deprived defendant of meaningful representation (*see People v Baldi*, 54 NY2d 137, 147 [1981]; *People v Miller*, 11 AD3d 729 [2004]).

Given the foregoing, defendant's remaining arguments are academic.

Cardona, P.J., and Kavanagh, J., concur.

Carpinello, J. (dissenting). We respectfully dissent. First, viewed in a light most favorable to the People, the trial record

---

* At arraignment, even County Court questioned the propriety of including all of the charges in one indictment, but defense counsel made no comment or objection.

persuades us that the unpreserved issue pertaining to the legal sufficiency of the evidence is without merit. Moreover, we take exception to the majority's finding that defendant's trial counsel was ineffective. We would therefore affirm defendant's conviction on all counts.

Exceptionally strong circumstantial evidence was presented at trial establishing that defendant, angry over the breakup of his marriage, committed numerous acts of vandalism against his ex-wife and her mother during a 12-week period in 2006 (defendant's ex-wife, along with their three young children, lived in the mother's home). According to testimony, on several occasions in the middle of the night, someone twice entered their locked garage slashing tires and scratching a vehicle, sprayed-painted obscenities on the garage door, smashed the ex-wife's bedroom window as she slept and cut wires to the house. Testimony further established that there were burn marks on the outside of the garage one particular morning. According to the ex-wife, defendant told her that these events "would stop" and he would leave her alone if she broke up with her then current boyfriend.

During this same time period, defendant told his roommate, Donald Palmer, of his desire "to do things to [his ex-wife's] home" in retaliation for her relationship with another man even though "the children were in there." Defendant shared his plans to spray paint obscenities on the house—indeed Palmer was with him when he purchased the spray paint—to cut the wires to her house and to burn it down. Defendant also shared his desire to murder his ex-wife and blame it on the "Mafia." According to Palmer, after defendant would state his intention to commit certain acts against his ex-wife, he would leave the house alone at night clad in camouflage, only to return home in the wee hours of the morning. Palmer would later learn that such acts took place. Defendant confessed to Palmer that he spray-painted the house and slashed the tires. There was also strong evidence establishing that, during this very same time period, defendant had nonconsensual sexual contact with Palmer's girlfriend (hereinafter the victim), a troubled 17 year old who was no longer living with her parents because of problems and was therefore staying with Palmer at defendant's house. Notably, Palmer, in addition to providing highly relevant testimony about the acts committed against defendant's ex-wife and her mother, provided highly relevant testimony about the acts committed against the victim.

With this backdrop, we address first the issue of whether the evidence at trial was legally sufficient to support the charges of

rape in the first degree and criminal sexual act in the first degree against the victim. The majority finds that the element of forcible compulsion was not established by the People to support either charge. Viewing the evidence at trial most favorable to the People and considering whether a rational juror could have concluded that all elements of these crimes were established beyond a reasonable doubt (*see People v Cabey*, 85 NY2d 417, 421 [1995]), we are satisfied that all such elements, including forcible compulsion, were so established.

The subject charges arise out of the same incident. Testimony established that one evening while the victim was at defendant's home, she drank an entire bottle of alcohol that had been provided to her by him. She was highly intoxicated and physically ill when defendant began touching her sexually. According to her testimony, she repeatedly protested his efforts to sodomize her and to have intercourse with her but he continued to do so. The victim repeatedly acknowledged that the incident was "forced" sexual intercourse. Notably, Palmer testified that he heard the victim's screams of protest during this incident and ultimately came to her assistance.

As noted by this Court, "[t]he element of forcible compulsion is examined through the state of mind produced in the victim, and relevant factors include the age of the victim, the relative size and strength of the defendant and victim, and the nature of the defendant's relationship to the victim" (*People v Val*, 38 AD3d 928, 929 [2007], *lv denied* 9 NY3d 852 [2007] [quotation marks and citation omitted]; *see People v Davis*, 21 AD3d 590, 591-592 [2005]). Here, the victim was a troubled 17-year-old girl who, at the time of the subject incident, was highly intoxicated and physically ill. While the record does not reveal her size, the jury was obviously able to take note of same, as well as her general demeanor.[1] Defendant, on the other hand, was described as a "[p]retty strong guy," was 38 years old, six feet tall and weighed 195 pounds. Significantly, according to the victim, during the relatively short period of time that she resided in defendant's home, she witnessed his violent temper and heard him threaten to kill himself. She also heard defendant state that he burned down a building, that he hated his ex-wife, that he wished his ex-wife were dead and that "[h]e wished something would happen to her." She further testified that defendant would get "really mad" when she would not do what he wanted, that she was scared of him and that he was "mean" (*cf. People v Fuller*, 50 AD3d 1171, 1175 [2008]).

---

1. During summation, the prosecutor noted the jury's "chance to see [the victim]" and went on to describe her as a sad child with low self-esteem.

While the majority correctly asserts that defendant's threat to kick the victim out of his home if she did not engage in sexual acts with him did not constitute a threat that put her in fear of injury or death, this threat does establish his position of dominance and authority over her, which is certainly a relevant factor in considering the issue of forcible compulsion (*see People v Beecher*, 225 AD2d 943, 945 [1996]). Given the victim's account of what transpired, her highly intoxicated state, her provoked screams which were heard by Palmer, her stated fear of defendant, her age and stature as compared to his and defendant's position of dominance over her, we are satisfied that there exists a valid line of reasoning and permissible inferences which could lead a rational jury to conclude, as this one obviously did, that defendant committed the acts of sexual intercourse and oral sexual contact by means of forcible compulsion (*see People v Brown*, 39 AD3d 886, 888 [2007], *lv denied* 9 NY3d 873 [2007]; *People v Val, supra; People v Fleegle*, 20 AD3d 684, 687 [2005], *lv denied* 5 NY3d 828 [2005], *cert denied* 547 US 1152 [2006]; *People v Oglesby*, 12 AD3d 857, 859-860 [2004], *lv denied* 5 NY3d 792 [2005]; *People v Stephens*, 2 AD3d 888, 889 [2003], *lv denied* 2 NY3d 746 [2004]; *People v Black*, 304 AD2d 905, 908 [2003], *lv denied* 100 NY2d 578 [2003]; *People v Smith*, 302 AD2d 677, 679 [2003], *lv denied* 100 NY2d 543 [2003]; *People v Sehn*, 295 AD2d 749, 750-751 [2002], *lv denied* 98 NY2d 732 [2002]; *People v Jackson*, 290 AD2d 644, 646 [2002], *lv denied* 98 NY2d 711 [2002]; *People v Richardson*, 284 AD2d 920, 921 [2001]; *People v Bailey*, 252 AD2d 815, 816-817 [1998], *lv denied* 92 NY2d 922 [1998]; *People v Beecher, supra*).

Likewise, viewing the evidence most favorable to the prosecution, we find a rational juror could have concluded that it was legally sufficient to establish all of the elements of the aggravated sexual abuse in the fourth degree charge, particularly the disputed element of physical helplessness. Notably, "[t]he state of the victim's physical helplessness at any given moment is largely a question of fact" for the jury (*People v Teicher*, 52 NY2d 638, 649 [1981]). The victim's testimony on this particular count established that on another occasion during the time period she resided with defendant, she was again highly intoxicated and physically ill as a result of drinking almost an entire bottle of alcohol. In her highly intoxicated state, she "ended up" in defendant's bedroom with no recollection as to how she got there. At this time, defendant forcibly placed a vibrator into her vagina.

Her testimony makes clear that she did not initially protest this act because of her physical condition, that is, because she

was so intoxicated and did not feel well. Significantly, she acknowledged that she was so sick from drinking that she did not "feel like" fighting defendant, a clear indication of physical helplessness in our opinion or, at the very least, a permissible inference of same. Thus, even though, as noted by the majority, the victim *eventually* communicated an unwillingness to defendant, a clear permissible inference exists that she was physically helpless at the time of the act because of the effects of alcohol such that this conviction was based upon legally sufficient evidence (*see People v Himmel*, 252 AD2d 273, 275-275 [1999], *lv denied* 93 NY2d 899 [1999]). Stated otherwise, "the trier of fact was entitled to infer that she lacked capacity to consent to the original touching because of her generally weakened condition [from the effects of being highly intoxicated and ill]" (*People v Teicher*, 52 NY2d at 646).

As to the issue of trial counsel's effectiveness, we find that counsel, in the face of strong evidence of guilt, pursued a cogent defense which, significantly, was partially successful.[2] In fact, trial counsel obtained an acquittal on nearly one third of the counts against defendant, including the more serious charges of criminal sexual act in the first degree, arson in the second degree and reckless endangerment in the first degree. As to those counts stemming from the acts against his ex-wife and her mother, trial counsel repeatedly highlighted the lack of any direct evidence linking defendant to these crimes, elicited testimony that arson was committed on their property *after* defendant was incarcerated and suggested the motive of others to commit the charged acts. With respect to those counts stemming from conduct pertaining to the victim, trial counsel highlighted conceded consensual sexual acts between them, highlighted significant inconsistencies between the victim's testimony and that of Palmer on key events and otherwise made reasonable attempts to undermine her credibility. Trial counsel also effectively highlighted the complete dearth of physical evidence substantiating a count of the indictment charging him with criminal sale of a controlled substance in the third degree, and defendant was acquitted of this charge as well.

Notwithstanding, the majority claims that numerous errors on the part of trial counsel, considered cumulatively, deprived defendant of meaningful representation. We cannot agree. Trial counsel had no duty to make an opening statement (*see* CPL 260.30 [4]; *see generally People v Rojas*, 97 NY2d 32, 38 [2001])

---

2. Tellingly, the jury reached its verdict—finding defendant guilty of 11 counts of the indictment and not guilty of five counts—in less than 2½ hours with no requests of any kind.

and the only two witnesses for whom he had no questions were auto body employees who repaired the vandalized vehicles and who thus had no relevant information to promote the defense strategy. Thus, the permissible decisions to waive opening statement and forgo these cross-examinations cannot fairly be characterized as "errors" on his part or indications of ineffectiveness.

Additionally, we find nothing "cursory [or] unorganized" about trial counsel's closing statement. Consistent with the defense theory as to those charges relating to the victim, trial counsel pointed out inconsistencies in testimony, pointed out the lack of direct evidence pertaining to the drug charge (defendant was acquitted of this count), questioned whether any act of the sexual contact was nonconsensual since the victim admitted during her testimony that she was willing to do certain acts (defendant was acquitted of that count of the indictment alleging that he forced the victim to perform oral sex on him) and highlighted the lack of evidence of a "forceful threat" against her to establish rape. As to those charges against his ex-wife, and again consistent with the defense theory, trial counsel pointed out the lack of any eyewitness placing him at the scene, pointed out the lack of physical evidence connecting him to these crimes, questioned defendant's ability to carry out the crimes in the manner described by Palmer and pointed out that another fire was set on the property after his incarceration (defendant was acquitted of arson, reckless endangerment and endangering the welfare of a child, which were all based on allegations of burn marks found on the house prior to his incarceration).

While trial counsel sought, but apparently never pursued, a *Molineux* hearing, the primary bad act evidence that came out at trial concerned defendant's prior threats against his ex-wife. In our view, these threats were highly relevant to circumstantially prove defendant's motive and intent to commit the charged crimes against her and also highly relevant to establish the victim's reasonable fear of him vis-à-vis the forcible compulsion element of two of the charged crimes, with the probative value outweighing the potential for prejudice (*see People v Molineux*, 168 NY 264, 293 [1901]; *see e.g. People v Laviolette*, 307 AD2d 541, 542-543 [2003], *lv denied* 100 NY2d 643 [2003]; *People v Cobenais*, 301 AD2d 958, 962 [2003], *lv denied* 99 NY2d 653 [2003]; *People v Jones*, 289 AD2d 1010 [2001], *lv denied* 97 NY2d 756 [2002]; *People v Martin*, 245 AD2d 833, 833-834 [1997], *lv denied* 92 NY2d 856 [1998]; *People v Johnson*, 277 AD2d 702, 705 [2000], *lv denied* 96 NY2d 831 [2001]; *People v*

*Saunders*, 210 AD2d 164 [1994], *lv denied* 84 NY2d 1038 [1995]). Any chance in successfully excluding these prior threats was minimal. To be sure, while trial counsel was indeed "remiss" in his handling of the evidence concerning defendant's prior bad acts and his representation of defendant was not "error-free" (*People v Echavarria*, 53 AD3d 859, 864 [2008]), when viewed in the totality of the circumstances and noting the high burden on counsel to demonstrate the claim (*see People v Flores*, 84 NY2d 184, 189 [1994]), we cannot conclude that any act or omission on his part, viewed in insolation or cumulatively, so prejudiced defendant's right to a fair trial that he did not receive meaningful representation (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *People v Echavarria, supra*).[3] "[T]he standard is whether defendant was provided a fair trial, not a perfect one" (*People v Wright*, 5 AD3d 873, 877 [2004], *lv denied* 3 NY3d 651 [2004]). To this end, we find it noteworthy that trial counsel was an experienced defense attorney—indeed he was the Chief Public Defender in the county—and that, at the conclusion of the trial, County Court, sua sponte, "compliment[ed] both attorneys for preparing for the trial and presenting their evidence and conducting themselves in a very admirable fashion."[4] Thus, defendant's convictions should be affirmed in every respect.

Spain, J., concurs.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, dismiss counts 1, 4 and 6 of the indictment, and matter remitted to the County Court of Washington County for a new trial on counts 2, 3, 7, 9, 10, 11, 12 and 13 of the indictment.

---

**3.** With respect to trial counsel's failure to request a limiting instruction regarding testimony of his prior threats, this Court has noted that "the failure to make [such] request could have been a strategic decision to avoid highlighting that testimony" (*People v Cherry*, 46 AD3d 1234, 1238 [2007], *lv denied* 10 NY3d 839 [2008]).

**4.** The majority argues that trial counsel was deficient for failing to request a severance of the charges in the indictment. We are compelled to note that defendant's appellate counsel, despite filing a 105-page brief and 24-page reply brief, does not even raise this claim. This Court does not ordinarily raise and consider issues not briefed by the parties and we would not do so here.