People v Kelsey (2019 NY Slip Op 05346)





People v Kelsey


2019 NY Slip Op 05346


Decided on July 3, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 3, 2019

110652

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
MICHAEL N. KELSEY, Appellant.

Calendar Date: May 3, 2019

Before: Garry, P.J., Egan Jr., Lynch, Clark and Rumsey, JJ.


The Law Office of Shane Hug, Troy (Shane Hug of counsel), for appellant.
Gary M. Pasqua, District Attorney, Canton (Matthew L. Peabody of counsel), for respondent.



MEMORANDUM AND ORDER
Lynch, J.
Appeal from a judgment of the County Court of St. Lawrence County (Catena, J.), rendered October 21, 2016, upon a verdict convicting defendant of the crimes of sexual abuse in the first degree, attempted sexual abuse in the first degree, forcible touching and endangering the welfare of a child (two counts).
In June 2015, defendant was charged in a five-count indictment with sexual abuse in the first degree, attempted sexual abuse in the first degree, forcible touching and two counts of endangering the welfare of a child. The charges stemmed from defendant sexually touching victim A (born in 1999) and attempting to sexually touch victim B (born in 1999) while supervising a week-long boy scouts hiking trip. Following a jury trial, defendant was convicted as charged. Thereafter, defendant was sentenced to a prison term of five years followed by 10 years of postrelease supervision for his conviction of sexual abuse in the first degree and to a consecutive prison term of two years followed by 10 years of postrelease supervision for his conviction of attempted sexual abuse in the first degree, as well as to other lesser concurrent sentences. Defendant appeals.
Defendant contends that the jury verdict is not supported by legally sufficient evidence and is against the weight of the evidence. Initially, as defendant concedes, he failed to preserve his legal sufficiency claim as he did not move for a trial order of dismissal (see People v Hawkins, 11 NY3d 484, 492 [2008]; People v Secor, 162 AD3d 1411, 1412 [2018], lv denied 32 NY3d 941 [2018]). "However, a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crimes" (People v Werkheiser, 171 AD3d 1297, 1298 [2019] [internal quotation marks and citations omitted]; see People v Vega, 170 AD3d 1266, 1267 [2019]). "When undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then[, if not,] weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences [*2]that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence. When conducting this review, we consider the evidence in a neutral light and defer to the jury's credibility assessments" (People v Gill, 168 AD3d 1140, 1140-1141 [2019] [internal quotation marks and citations omitted]; see People v Hackett, 167 AD3d 1090, 1091-1092 [2018]).
The focus of defendant's argument is that the evidence failed to demonstrate that he committed the charged crimes because of inconsistencies in each victim's testimony. As relevant here, "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [w]hen the other person is incapable of consent by reason of being physically helpless" (Penal Law § 130.65 [2]). "A person is guilty of forcible touching when such person intentionally, and for no legitimate purpose . . . forcibly touches the sexual or other intimate parts of another person for the purpose of degrading or abusing such person, or for the purpose of gratifying the actor's sexual desire" (Penal Law § 130.52 [1]). Additionally, as charged herein, "[a] person is guilty of endangering the welfare of a child when . . . [h]e or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old" (Penal Law § 260.10 [1]).
At trial, the two victims testified and described various acts of defendant touching and attempting to touch their penises, occurring at specific times and places. They each also described a game played during scouting trips called "padiddle," during the course of which the losing player in a round would remove an article of clothing. Each victim described the circumstances and delay in their disclosure of these incidents. They were each subject to cross-examination, and certain inconsistencies in their accounts were thus revealed. Victim B's mother testified that, after victim B had disclosed to her defendant's conduct, she contacted the police. Thereafter, at the directive of the police, she made a controlled phone call to defendant, in which he made incriminating statements with respect to both victims.
Defendant denied the allegations of both victims. Defendant testified extensively regarding the controlled phone call between himself and victim B's mother providing various explanations for his statements. On cross-examination, defendant admitted to sending a series of emails in November and December 2014 to a scout master in which he also made certain incriminating statements. Other witnesses testified as to defendant's positive reputation in the community, and two boy scout witnesses testified that they were familiar with "padiddle," but that game did not involve removal of clothing.
Regarding defendant's conviction of sexual abuse in the first degree, both victims testified consistently that, while they were asleep, defendant made and attempted to make sexual contact with them, which established that the victims were physically helpless and unable to consent to such conduct (see Penal Law §§ 130.00 [7]; 130.65 [2]; People v Tucker, 149 AD3d 1261, 1262 [2017], lv denied 29 NY3d 1087 [2017]; People v Yontz, 116 AD3d 1242, 1243 [2014], lv denied 23 NY3d 1026 [2014]). The victims' testimonies were further corroborated by the controlled phone call between defendant and victim B's mother, in which defendant admitted to attempting to touch victim B and stated that it could have also happened with victim A, as well as the email messages sent by defendant to a scout master. Similarly, as to the forcible touching conviction, victim A's testimony that defendant sexually touched him, while defendant was sleeping next to him, established the requisite contact to support the guilty verdict (see Penal Law § 130.52 [1]; People v Wagner, 72 AD3d 1196, 1197 [2010], lv denied 15 NY3d 779 [2010]). The inference that defendant's sexual touching was to gratify his sexual desire is "clearly appropriate when a nonrelative causes intimate contact with a child" (People v Fuller, 50 AD3d 1171, 1175 [2008] [internal quotation marks, ellipses and citations omitted], lv denied 11 NY3d 788 [2008]). As for the convictions of endangering the welfare of a child, the testimony of each victim regarding defendant's sexual contact and attempted sexual contact establishes that defendant acted in a manner likely to be injurious to the physical, mental or moral welfare of the victims (see Penal Law § 260.10 [1]; People v Toft, 156 AD3d 1234, 1235 [2017]). Although both victims admitted to some inconsistencies in their disclosures of the incidents, these inconsistencies were minor and did not render their testimonies "inherently unbelievable or [*3]incredible as a matter of law" (People v Werkheiser, 171 AD3d at 1301 [internal quotation marks and citation omitted]). Additionally, these issues were thoroughly explored on cross-examination and presented credibility questions to be resolved by the jury (see People v Chaneyfield, 157 AD3d 996, 1000 [2018], lv denied 31 NY3d 1012 [2018]; People v Russell, 116 AD3d 1090, 1092 [2014]). As such, we find that the verdict was not against the weight of the evidence (see People v Hackett, 167 AD3d at 1093-1094; People v Van Alphen, 167 AD3d 1076, 1078 [2018], lv denied 32 NY3d 1210 [2019]).
Defendant also claims that he was deprived of the effective assistance of counsel due to counsel's asserted pretrial and trial errors. "In general, a defendant's constitutional right to effective representation is met so long as the evidence, the law, and the circumstances of a particular case, viewed in totality, reveal that the attorney provided meaningful representation" (People v Hackett, 167 AD3d at 1095 [internal quotation marks, brackets, ellipses and citations omitted]; see People v Rawlinson, 170 AD3d 1425, 1430 [2019]). The burden is on the defendant to " demonstrate the absence of strategic or other legitimate explanations for counsel's choices" (People v Thiel, 134 AD3d 1237, 1240 [2015] [internal quotation marks, brackets and citations omitted], lv denied 27 NY3d 1156 [2016]; see People v Lewis, 138 AD3d 1346, 1348 [2016], lv denied 28 NY3d 1073 [2016]). Defendant first contends that defense counsel improperly waived a Huntley hearing regarding defendant's inculpatory statements during the controlled phone call. The record indicates, however, that defendant had "extensive discussions" with defense counsel regarding the controlled call, and defendant instructed counsel to waive the hearing (see People v Henriquez, 3 NY3d 210, 217 [2004]; People v Davis, 308 AD2d 343, 345 [2003], lv denied 1 NY3d 570 [2003]). Further, the record does not contain any evidence to show that defense counsel's waiver of a Huntley hearing was not a strategic decision in light of his trial strategy (see People v Umana, 143 AD3d 1174, 1175 [2016], lv denied 29 NY3d 1037 [2017]; People v Thiel, 134 AD3d at 1240-1241). To the extent that defendant complains that his counsel failed to object to the introduction of his statements during the controlled call as involuntarily, counsel cannot be faulted for not making an objection that would have had little chance of success (see People v Caban, 5 NY3d 143, 152 [2005]; People v Brown, 169 AD3d 1258, 1260 [2019]).
Defendant further contends that his counsel was ineffective in failing to object to the introduction of defendant's prior bad acts. However, such evidence was admissible to show defendant's intent and motive, provide necessary background and complete the victims' narratives, and the record shows that County Court balanced the probative value of this testimony against its prejudicial effect (see People v Sorrell, 108 AD3d 787, 792 [2013], lv denied 23 NY3d 1025 [2014]; People v Jones, 101 AD3d 1482, 1483 [2012], lv denied 21 NY3d 1017 [2013]). Similarly, certain testimony regarding the victims' disclosures of sexual conduct was relevant to explain how the victims eventually disclosed the sexual conduct and how the investigation started (see People v Ludwig, 24 NY3d 221, 231 [2014]; People v Gross, 118 AD3d 1383, 1384 [2014], affd 26 NY3d 689 [2016]). In addition, defendant failed to show that defense counsel's failure to object to certain undesirable testimony was not a purposeful choice made to avoid drawing further attention to it (see People v Rodriguez, 135 AD3d 1181, 1185-1186 [2016], lv denied 28 NY3d 936 [2016]). We also do not find that counsel was ineffective in failing to move for a trial order of dismissal (see People v LaDuke, 140 AD3d 1467, 1471 [2016]). Overall, the record reveals that defense counsel pursued a rational trial strategy, presented cogent opening and closing statements, vigorously cross-examined the victims and the People's other witnesses and called witnesses for the defense, thus providing defendant with meaningful representation (see People v LaDuke, 140 AD3d at 1471-1472; People v Echavarria, 53 AD3d 859, 864 [2008], lv denied 11 NY3d 832 [2008]; People v Fuller, 50 AD3d at 1176; People v Wright, 5 AD3d 873, 877 [2004], lv denied 3 NY3d 651 [2004]).
Finally, we are unpersuaded that defendant's sentence, which fell within the statutory parameters, was harsh or excessive. In addition to considering letters from various community members — who asked for leniency due to their view of defendant's character and his past good work — County Court also considered the trial testimony, the presentence report and the victim impact statements. Given defendant's denial of responsibility for his actions, his exploitation of a [*4]position of trust and the devasting effect on the victims, we find no abuse of discretion or extraordinary circumstance warranting a reduction of the sentence in the interest of justice (see People v Horton, ___ AD3d ___, ___, 2019 NY Slip Op 04782, *3 [2019]; People v Jaeger, 96 AD3d 1172, 1175 [2012], lv denied 19 NY3d 997 [2012]; People v Bartolillo, 47 AD3d 1122, 1122 [2008]). Defendant's remaining contentions, to the extent not specifically addressed herein, have been examined and found to be lacking in merit.
Garry, P.J., Egan Jr., Clark and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.