Devine, J.
Appeal from a judgment of the County Court of Schenectady County (Giardino, J.), rendered February 28, 2014, upon a verdict convicting defendant of the crime of rape in the first degree.
*1262 Defendant was charged in an indictment with rape in the first degree and menacing in the second degree as the result of a 2011 incident wherein he allegedly, among other things, sexually assaulted a physically helpless victim. A trial ended in his acquittal on the menacing count and a hung jury on the rape count. Defendant was thereafter convicted, upon a retrial, of first degree rape. County Court sentenced defendant, a second felony offender, to 20 years in prison and 10 years of post-release supervision. Defendant now appeals.
Defendant asserts that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence, alleging a dearth of proof as to whether the victim was “incapable of consenting] [to sexual intercourse] by reason of being physically helpless” (Penal Law § 130.35 [2]; see Penal Law § 130.00 [7]). In that regard, the victim testified that she was in defendant’s apartment at his invitation and smoking marihuana. Defendant gave her two pills to “calm [her] down” and, despite already having smoked marihuana and being on an array of medication for mental health issues, she felt “pressured” to take them and did so. The victim then lay inert on his bed, fully clothed, and lost consciousness while defendant crawled on top of her and kissed her. She woke up a few minutes later with vaginal discomfort and no pants or underwear on, leading her to realize that defendant had violated her while she was asleep. Her suspicions were confirmed by a sexual assault examination and DNA testing.* Other tests revealed that the victim had doxepin in her system, a drug with sedative properties that she had not been prescribed. The jury also heard Kevin Allen testify as to conversations he had with defendant, while the two were jailed together, in which defendant recounted giving the victim his “special knockout pills” and having his way with her after she became insensible. This evidence was legally sufficient to support the finding that the victim was physically helpless and unable to consent to defendant having sex with her (see People v Stahl, 141 AD3d 962, 963-964 [2016], lv denied 28 NY3d 1127 [2016]; People v Kessler, 122 AD3d 1402, 1403 [2014], lv denied 25 NY3d 990 [2015]). Further, deferring to the jury’s decision to credit the testimony of the victim and Allen notwithstanding defendant’s *1263 strenuous efforts to call their accounts into question, we conclude that the verdict was “supported by the weight of the credible evidence” (People v Stahl, 141 AD3d at 964; see People v Shepherd, 83 AD3d 1298, 1299 [2011], lv denied 17 NY3d 809 [2011]; People v Fuller, 50 AD3d 1171, 1174 [2008], lv denied 11 NY3d 788 [2008]).
Defendant next argues that he did not voluntarily consent to a search of his apartment and that, as such, evidence recovered during the search should have been suppressed. Investigators must normally obtain a warrant, founded upon probable cause, to search a residence, but “one of the limited exceptions to the warrant requirement is voluntary consent” (People v Ortiz, 141 AD3d 872, 874 [2016]; see People v Gonzalez, 39 NY2d 122, 127 [1976]; People v Madden, 58 AD3d 1023, 1025 [2009]). The suppression hearing testimony reveals that a police detective and a patrol officer visited defendant at his apartment after the rape accusation surfaced. Defendant invited them in, at which point the detective explained why they were there and asked if defendant would allow an evidence technician to take his bedding and snap a few photographs of the apartment. Defendant agreed after some discussion, then reviewed and executed a written consent form that advised him of his right to refuse to consent to a search. Defendant was not in custody or under arrest at any point that day, appeared lucid and had no obvious difficulty reading the form. The suppression court found from the foregoing that the People met their “heavy burden” of showing that defendant freely consented to a search of his residence, and we concur with that assessment (People v Gonzalez, 39 NY2d at 128; see People v Curtis, 144 AD3d 1199, 1200 [2016]; People v Garnsey, 288 AD2d 761, 762 [2001], lv denied 97 NY2d 754 [2002]).
Defendant’s claim of ineffective assistance is also unpersuasive. He primarily questions defense counsel’s failure to impeach the victim with inconsistent statements from her testimony at the first trial. Defense counsel instead cross-examined the victim regarding a prior accusation of rape that she admitted was false and broader mental health concerns that included her being a self-described “pathological liar” who had experienced hallucinations of sexual assault in the past. In our view, “defendant has not met his high burden of demonstrating the absence of strategic or other legitimate explanations” for avoiding issues that could well have distracted the jury from a potent attack on the victim’s credibility (People v Garcia, 131 AD3d 732, 735 [2015] [internal quotation marks, brackets and citations omitted], lv denied 27 NY3d 997 [2016]; *1264 see People v Wiltshire, 96 AD3d 1227, 1229 [2012], lv denied 22 NY3d 1204 [2014]). Defendant also complains that prior counsel should have moved to suppress evidence due to his warrantless arrest in his apartment but, insofar as the record reflects that defendant voluntarily accompanied investigators to the police station for questioning on the day he was arrested (see People v Locke, 25 AD3d 877, 879 [2006], lv denied 6 NY3d 835 [2006]; People v Baird, 111 AD2d 1044, 1045 [1985], lv denied 66 NY2d 761 [1985]), counsel was not ineffective in failing to make a doomed motion to suppress on those grounds (see People v Carver, 27 NY3d 418, 420-421 [2016]). Defendant points to other alleged missteps as well, but our review of the record as a whole satisfies us that he received meaningful representation (see People v Baldi, 54 NY2d 137, 147 [1981]; People v Wiltshire, 96 AD3d at 1229).
Defendant’s remaining arguments warrant little discussion. With respect to his efforts to have new counsel assigned prior to retrial, “[w]hile defendant expressed some dissatisfaction with counsel, there was not a showing of sufficient good cause to warrant a substitution of counsel” (People v Davenport, 58 AD3d 892, 895 [2009], lv denied 12 NY3d 782 [2009]; see People v Puccini, 145 AD3d 1107, 1109 [2016]). Lastly, after reviewing defendant’s prior criminal history and the nature of the offense for which he was convicted, we do not perceive the sentence imposed to be harsh or excessive (see People v Bjork, 105 AD3d 1258, 1264 [2013], lv denied 21 NY3d 1040 [2013], cert denied 571 US —, 134 S Ct 1306 [2014]; People v Shepherd, 83 AD3d at 1301-1302).
Garry, J.P., Egan Jr., Rose and Aarons, JJ., concur.
Ordered that the judgment is affirmed.

 Defendant refused to submit to a court-ordered buccal swab DNA test and, as a result, investigators obtained his DNA from a discarded juice cup. Contrary to defendant’s contention, County Court properly instructed the jury as to how those facts could constitute proof of his consciousness of guilt (see People v MacDonald, 89 NY2d 908, 910 [1996]; People v Demetsenare, 243 AD2d 777, 780 [1997], lv denied 91 NY2d 833 [1997]; see also CJI2d[NY] Consciousness of Guilt).