People v Sturgill (2025 NY Slip Op 01260)

People v Sturgill

2025 NY Slip Op 01260

Decided on March 6, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 6, 2025

113157 CR-24-0079
[*1]The People of the State of New York, Respondent,
v
Andrew Sturgill, Appellant.

Calendar Date:January 7, 2025

Before:Clark, J.P., Reynolds Fitzgerald, Ceresia, McShan and Powers, JJ.

Angela Kelley, East Greenbush, for appellant.
Emmanuel C. Nneji, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeals (1) from a judgment of the County Court of Ulster County (James Farrell, J.), rendered June 24, 2021, upon a verdict convicting defendant of the crimes of rape in the first degree, burglary in the second degree and sexual abuse in the first degree, and (2) by permission, from an order of said court, entered March 9, 2022, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
Defendant was charged by indictment with rape in the first degree, sexual abuse in the first degree and burglary in the second degree as a result of a 2019 incident wherein he allegedly sexually assaulted a physically helpless victim. Following a jury trial, defendant was convicted as charged and sentenced to a prison term of 20 years, to be followed by 20 years of postrelease supervision, upon the rape in the first degree conviction and lesser concurrent terms on the other convictions. Thereafter, defendant moved unsuccessfully to vacate the judgment of conviction pursuant to CPL 440.10. Defendant appeals from the judgment of conviction, and, by permission of this Court, from the order denying his motion to vacate.
As to the convictions for rape in the first degree and sexual abuse in the first degree, defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of evidence, arguing that the victim was not physically helpless. "In conducting a legal sufficiency analysis, this Court views the evidence in the light most favorable to the People and evaluates whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Holmes, 227 AD3d 1184, 1185 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 971 [2024]). "When conducting a weight of the evidence review, this Court must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Christie, 224 AD3d 1097, 1097-1098 [3d Dept 2024] [internal quotation marks and citations omitted]).
A person is guilty of rape in the first degree when, as relevant here, "he or she engages in sexual intercourse with another person . . . [w]ho is incapable of consent by reason of being physically helpless" (Penal Law § 130.35 [former (2)]). "A person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . . [w]hen the other person is incapable of consent by reason of being physically helpless" (Penal Law § 130.65 [2]). A person [*2]is physically helpless if he or she is "unconscious or for any other reason is physically unable to communicate unwillingness to an act" (Penal Law § 130.00 [7]).
The victim testified that in 2019 she lived with two roommates, one male and one female, in a shed that was converted into a small apartment. She stated that she slept in this converted apartment, consisting of one room with two beds, every night from the day she moved back to New York in May 2019 through the date of the incident. On the day of the incident, the victim was socializing with acquaintances, including defendant. In the early afternoon, she took her medication [FN1] and subsequently began drinking the first of two 22-ounce bottles of beer. She had not eaten that day and was halfway through her second bottle when she began to feel nauseous and dizzy. Shortly thereafter, she laid her head on a table, and, sometime after this she vomited. Eventually, her female roommate helped her into the shed and her bed, removed her pants and put a comforter over her, after which the victim passed out. After that, she testified that she remembered an awareness of the blanket being removed, and felt a penis being inserted into her vagina, and then fell back to sleep. The victim further asserted that during the incident she was unable to speak, open her eyes or lift her head. The victim further relayed how the police were called to the residence, she spoke to them and then proceeded to the hospital for a sexual assault examination.
The victim's two roommates, both of whom were present that day, testified that the victim was "very intoxicated" and had to be helped to bed. They further testified that after everyone had left the gathering, they spotted defendant exiting the shed, at which time they confronted him and directed him to leave the property.[FN2] The female roommate testified that after this confrontation with defendant she went into the shed and tried to wake the victim and that after several minutes, including shaking her, the victim eventually woke up. When the roommate asked her how she was, the victim began crying and said she was raped.
A forensic toxicology consultant testified that Prozac is an antidepressant and alcohol is a central nervous system depressant. She further testified that the federal Food and Drug Administration and the Physician's Desk Reference have published warnings that Prozac should not be consumed with alcohol and that major sedation can occur when they are combined. A sexual assault nurse examiner testified that she performed an examination of the victim and collected numerous swabs. A forensic scientist with the State Police and forensic investigation center testified that she performed a serology examination on the five swabs collected from the victim and detected sperm on all swabs. A second State Police forensic scientist, who performed DNA testing on two swabs, testified that the vaginal swab matched defendant's profile, and the cervical swab was consistent [*3]with DNA for at least two individuals with a major contributor matching defendant.
The foregoing proof reflected that the victim was unable to consent when defendant initiated the sexual encounter and was physically unable to express her unwillingness to have sexual relations with defendant. Thus, when viewed in a light most favorable to the People, there is legally sufficient evidence to establish the elements of the charged conduct (see People v Dunham, 172 AD3d 1462, 1464 [3d Dept 2019], lv denied 33 NY3d 1068 [2019]; People v Granger, 166 AD3d 1377, 1379 [3d Dept 2018]; People v Tucker, 149 AD3d 1261, 1262 [3d Dept 2017], lv denied 29 NY3d 1087 [2017]).
As to the weight of the evidence, while a different verdict would not have been unreasonable, the jury had an opportunity to hear the victim's testimony and observe her demeanor, the victim's credibility was fully explored on cross-examination and no conflicting evidence was presented. Accordingly, when we view the evidence in a neutral light and accord deference to the jury's credibility assessments, we cannot say the verdict is against the weight of the evidence (see People v Dunham, 172 AD3d at 1464; People v Granger, 166 AD3d at 1379; People v Tucker, 149 AD3d at 1263).
Turning to the conviction for burglary in the second degree, defendant asserts that the evidence is legally insufficient and the verdict is against the weight of the evidence, arguing that the residence did not qualify as a dwelling because the shed was completely detached from the main house. Regarding defendant's legal sufficiency claim, to the extent that defendant argues that the shed was not a dwelling for purposes of Penal Law § 140.00 (3), defendant failed to preserve this issue as defendant's general motion to dismiss at trial was not specifically directed at the challenges he raises on appeal (see People v Lancaster, 200 AD3d 1352, 1355 [3d Dept 2021], lv denied 38 NY3d 951 [2022]; People v Rivera, 301 AD2d 787, 788 [3d Dept 2003], lv denied 99 NY2d 631 [2003]). "Nevertheless, in reviewing whether the verdict is against the weight of the evidence, this Court necessarily must ensure that the People proved each element of the crime beyond a reasonable doubt" (People v Velett, 205 AD3d 1143, 1143 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 39 NY3d 988 [2022]).
As charged in the indictment, "[a] person is guilty of burglary in the second degree when he [or she] knowingly enters or remains unlawfully in a building with intent to commit a crime therein, and . . . [t]he building is a dwelling" (Penal Law § 140.25 [2]). A "[d]welling means a building which is usually occupied by a person lodging therein at night" (Penal Law § 140.00 [3] [internal quotation marks omitted]). "Courts must look to the nature of the structure and determine whether it was normal and ordinary that it was used as a place for overnight lodging" (People v Gulnac, 309 AD2d 1070, 1071 [3d Dept 2003] [internal quotations [*4]marks, brackets and citations omitted]). There was ample evidence that the shed was converted into a dwelling. The photographic and testimonial evidence demonstrated that there were two beds, dressers, clothing and other personal items and that the victim and her roommates utilized the shed as their residence and slept there every night, including the date of the incident. Defendant did not dispute that the shed was suitable for human habitation and used regularly for overnight lodging. "[T]here is no requirement that the building must always be a home or what would normally be considered a residence" (People v Cummings, 16 NY3d 784, 785 [2011] [internal quotation marks and citation omitted], cert denied 565 US 862 [2011]). As such, the evidence is legally sufficient to support the conclusion that the shed was, in fact, a dwelling on the date of the burglary, and the conviction on this charge is not against the weight of the evidence (see People v Henry, 64 AD3d 804, 805 [3d Dept 2009], lv denied 13 NY3d 860 [2009]; People v Gulnac, 309 AD2d at 1071).
Next, we are unpersuaded by defendant's assertion that County Court abused its discretion in fashioning its Sandoval compromise. A defendant who chooses to testify may be cross-examined about a prior conviction to impeach his or her credibility as a witness (see People v Sandoval, 34 NY2d 371, 376 [1974]). "[T]rial courts have broad discretion as to which prior convictions can be inquired about and the extent of such inquiry" (People v Cole, 177 AD3d 1096, 1100 [3d Dept 2019] [internal quotation marks, ellipsis and citation omitted], lv denied 34 NY3d 1015 [2019]). "[T]here are no per se rules requiring preclusion because of the age, nature and number of a defendant's prior crimes" (People v Gray, 84 NY2d 709, 712 [1995] [internal quotation marks and citations omitted]). Here, the People sought to impeach defendant with a variety of prior out-of-state convictions dating from 2006 to 2017. The convictions concerned such matters as criminal trespass, probation violation and driving while intoxicated offenses. The court prohibited any inquiry regarding the oldest (2006) conviction, while allowing the People to query defendant solely as to whether he was convicted of the more recent offenses and disallowing any inquiry into the facts and circumstances of these convictions. Initially, "[a] criminal conviction in a foreign jurisdiction may be used against a defendant testifying in this [s]tate if the act or acts constituted a crime in that jurisdiction" (id. at 713). Furthermore, the court reasonably concluded that these convictions were probative of defendant's credibility because they demonstrated his willingness to place his own self-interest above society (see People v Keener, 152 AD3d 1073, 1074 [3d Dept 2017]; People v Pomales, 49 AD3d 962, 964 [3d Dept 2008], lv denied 10 NY3d 938 [2008]). Accordingly, as County Court struck an appropriate balance in its Sandoval ruling, the ruling did not constitute [*5]an abuse of discretion (see People v Stansberry, 224 AD3d 1089, 1091-1092 [3d Dept 2024], lv denied 42 NY3d 930 [2024]; People v Wheeler, 159 AD3d 1138, 1142 [3d Dept 2018], lv denied 31 NY3d 1123 [2018]; People v Gethers, 151 AD3d 1398, 1401 [3d Dept 2017], lv denied 30 NY3d 980 [2017]).
Defendant next asserts that County Court's response to a jury note eliminated the People's burden of proof on an essential element in the charge of rape in the first degree. "In fulfilling its statutory obligation to respond to a jury note (see CPL 310.30), the trial court is vested with discretion in determining the substance of its response, guided by the requirement that such response be meaningful" (People v Rawlinson, 170 AD3d 1425, 1429 [3d Dept 2019] [citations omitted], lv denied 33 NY3d 1107 [2019]). "The adequacy of the trial court's response is gauged by the form of the jury question, the particular issue of which inquiry is made, the supplemental instruction actually given, and the prejudice (if any) to the defendant" (People v Goff, 224 AD3d 1008, 1010 [3d Dept 2024] [internal quotation marks and citations omitted]). Here, the jury requested the definition of physically helpless and "how the law defines physically unable to communicate consent," "unconsciousness, unable to consent, can you give us further clarification?" County Court proposed to read the Criminal Jury Instruction for physically helpless and stated to the jury, "a person who is asleep or unable to communicate as a result of voluntary intoxication is considered physically helpless. It is for you, the jury, in this case to determine whether the alleged victim . . . was in fact unconscious or for any other reason was physically unable to communicate unwillingness to an act. That is your determination." In our view, County Court provided an appropriate and meaningful response to the jury's inquiry, thereby satisfying its statutory obligation. When viewed as a whole, the charge conveyed to the jury that it was their duty to determine whether the victim's sleep or voluntary intoxication constituted physical helplessness (see People v Rawlinson, 170 AD3d at 1429; People v Dunham, 172 AD3d at 1466).
Defendant also contends that he did not receive the effective assistance of counsel. He bases this contention on trial counsel's failure to pursue a speedy trial claim — an error that he argues, in and of itself, requires reversal — as well as numerous other errors, the cumulation of which, he argues, amount to his receiving ineffective assistance of counsel during the trial. We disagree. "A single error may qualify as ineffective assistance, but only when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial. Such cases are rare and typically involve the failure to raise a defense so clear-cut and dispositive that no reasonable defense counsel would have failed to assert it, and it must be evident that the decision to forgo the contention could [*6]not have been grounded in a legitimate trial strategy" (People v Watkins, 42 NY3d 635, 640 [2024] [internal quotation marks and citations omitted], cert denied ___ US ___, 145 S Ct 459 [2024]).
Defendant's argument centers on New York's discovery (see CPL art 245) and statutory speedy trial (see CPL 30.30) rules that were amended effective January 1, 2020. Defendant asserts that, although the People orally declared their readiness for trial in October 2019, they did not file a certificate of compliance in conformance with the new discovery rules and announce their readiness after the effective date of the amendments. This matter went to trial on April 7, 2021, and defendant argues that the statutory speedy trial days were exceeded, and counsel should have moved to dismiss on the first day of trial. The narrow question of whether the amendments to the CPL, imposing additional requirements that the People must fulfill before announcing their readiness for trial, were retroactive in this situation — i.e., where the People had previously declared their readiness for trial — was not heard before the Appellate Division until 2022 and was not determined by the Court of Appeals until June 2024. As such, this single issue does not require reversal as "an omitted argument does not constitute a clear-cut and completely dispositive defense . . . where its success depended on the resolution of novel questions" (People v Watkins, 42 NY3d at 640 [internal quotation marks and citation omitted]). Moreover, it has now been determined that "[t]here is no evidence, in the plain language of the amendments or the legislative history, that the [L]egislature intended to — or did — revert the People to a state of unreadiness on January 1, 2020" (People v King, 42 NY3d 424, 428 [2024]). In other words, there is no support for the argument that the amendments' effect was to cause the People to file an additional certificate of compliance.
As to defendant's remaining alleged failures, these complaints are premised on disagreements with trial strategies, and defendant has failed to show an absence of strategic or legitimate explanations for counsel's alleged inadequacies (see People v Imes, 226 AD3d 1080, 1084 [3d Dept 2024], lv denied 41 NY3d 1019 [2024]). Even supposing that counsel made some errors, "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Sevilla-Rosales, 206 AD3d 1247, 1248 [3d Dept 2022] [internal quotation marks and citation omitted], lv denied 38 NY3d 1153 [2022]; see People v Collins, 229 AD3d 846, 849 [3d Dept 2024]).
Defendant's contention that County Court sentenced him in a manner that penalized him for exercising his right to a jury trial is unpreserved "given his failure to object at sentencingto the disparity between the pretrial plea offer and the sentence imposed by the court" (People v Burdo, 210 [*7]AD3d 1306, 1311 [3d Dept 2022] [internal quotation marks and citation omitted], lv denied 39 NY3d 1077 [2023]; see People v Imes, 226 AD3d at 1084). Furthermore, in view of the act for which defendant was convicted, his failure to accept responsibility and his prior criminal history, we do not deem the sentence to be unduly harsh or severe (see People v Burdo, 210 AD3d at 1311; People v Warrington, 155 AD3d 1450, 1452 [3d Dept 2017]).
We reject defendant's contention that County Court erred in denying his CPL 440.10 motion without a hearing. "To demonstrate the existence of questions of fact requiring a hearing, a defendant is obliged to show that the nonrecord facts sought to be established are material and would entitle him or her to relief, and a court may deny a vacatur motion without a hearing if it is based on the defendant's self-serving claims that are contradicted by the record or unsupported by any other evidence" (People v Brown, 220 AD3d 1015, 1016 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 1091 [2024]). "Whether a defendant is entitled to a hearing on a CPL 440.10 motion is a discretionary determination that is subject to appellate review for an abuse of discretion" (People v Spradlin, 192 AD3d 1270, 1273 [3d Dept 2021] [internal quotation marks, brackets, ellipsis and citation omitted], lv denied 37 NY3d 960 [2021]).
Defendant claims that the People committed a Brady violation by failing to disclose the entirety of the victim's criminal convictions. In support of the motion, defendant provided a document showing several purported convictions. However, said document contains a disclaimer indicating that it "may not be 100% accurate or complete" and that the information may be used "as a starting point for your own due diligence and investigation." The document further states that the entity providing the results "didn't find any likely criminal records for the [victim] but [it] did find some that COULDbelong to the [victim]." Moreover, the convictions listed in the document consist mostly of traffic violations, which are "not considered a criminal conviction for impeachment purposes" (People v Bush, 184 AD3d 1003, 1008 [3d Dept 2020], lv denied 35 NY3d 1093 [2020]). Thus, even if these convictions could be reliably attributed to the victim and if these had been timely disclosed, we do not find that there was a reasonable possibility that it would have changed the outcome of the trial (see People v Campbell, 196 AD3d 834, 839 [3d Dept 2021], lv denied 37 NY3d 1025 [2021]; People v Wideman, 192 AD3d 1384, 1387 [3d Dept 2021], affd 38 NY3d 1067 [2022]).Under these circumstances, County Court did not abuse its discretion in denying defendant's CPL 440.10 motion without a hearing (see People v Brown, 220 AD3d at 1017; People v Spradlin, 192 AD3d at 1274).
Clark, J.P., Ceresia, McShan and Powers, JJ., concur.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: The victim was prescribed 20 milligrams of Prozac.
Footnote 2: Prior to directing defendant to leave the property, the roommates asked defendant to empty his pockets because they believed he had stolen something from them.